UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| LINDA E. DAVISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:13-cv-00054-GZS |
| | ) |
| | ) |
| AETNA LIFE INSURANCE COMPANY, | ) |
| | ) |
| Defendants | ) |

**RECOMMENDED DECISION ON
MOTION TO DISMISS AND MOTION TO AMEND**

In this action Plaintiff Linda E. Davison seeks to recover life insurance proceeds from Defendant Aetna Life Insurance Company, which administers the Maine School Management Association Group Insurance Trust (the "MSMA plan"). On May 13, 2013, I issued a procedural order (ECF No. 18) deferring ruling on Aetna's motion to dismiss (ECF No. 12) so that Davison, appearing pro se, could amend her complaint to set out her factual allegations in a series of numbered paragraphs that Aetna could succinctly answer and to determine, among other things, whether Davison intended to allege that her late husband was actually enrolled as a participant in the MSMA plan's life insurance program when he died. Davison has now filed a motion to amend (ECF No. 25) and has attached a proposed amended complaint (ECF No. 25-1) containing 19 numbered allegations. Not one of those allegations asserts that Mr. Davison was a participant in the plan when he died. Instead, the allegations are to the effect that Aetna's records designated Mr. Davison as having an "active" account with the MSMA plan. This seemingly minor qualification belies a pleading omission that is, in fact, substantial and material.

Davison has previously argued, and continues to insist, that she should recover life insurance proceeds from the MSMA plan because of bad business practices and errors and misstatements. In other words, her claim is based not on the fact that Mr. Davison was actually enrolled in the MSMA plan's life insurance program when he died, but on the fact that representatives of his employer and of Aetna mistakenly informed him that he had life insurance with the MSMA plan when he inquired about his insurance benefits after being diagnosed with terminal cancer.[1] (See, e.g., Pl.'s Surreply at 1-2, ECF No. 17 (indicating that Aetna "unfortunately made several errors between the years of 2007-2009 in respect to the life insurance policy" and that it "must be held accountable for the errors and misstatements"); Proposed Am. Compl. at 5 ¶ a, 8-9, ECF No. 25-1 (indicating that Davison bases her claim on reliance on a false statement made by an Aetna representative in 2008).) The pleading background further reflects that Mr. Davison enrolled in the MSMA plan in 2001, but only in connection with a brief period of employment with Maine SAD 57. (See Life Insurance Enrollment/Change Form, ECF No. 15-2.) Mr. Davison was no longer a SAD 57 employee when the issue of coverage arose. By that time, Mr. Davison worked for the Portland Schools. There is no allegation that Mr. Davison enrolled in the MSMA plan's life insurance program when, as alleged, he left SAD 57 and went to work for the Portland Schools in January 2002, or that he paid any premiums into the program during his employment with the Portland Schools. (Proposed Am. Compl. ¶¶ 2-4.)

Given this pleading background and Davison's continued failure to allege that Mr. Davison enrolled in the MSMA plan when he left SAD 57 and took up new employment with the Portland Schools, I recommend that the court deny the motion to amend as futile and grant Aetna's motion to dismiss.

---

[1] A benefit offered under the Maine School Management Association Group Insurance Trust.

2

**BACKGROUND**

Davison commenced this lawsuit against Aetna on February 19, 2013. Davison seeks to recover life insurance proceeds under the MSMA plan's life insurance program, an employee benefit plan. In her original complaint, removed by Aetna from York County Superior court, Davison alleged state law claims of breach of contract, negligence, misrepresentation, and breach of the implied duty of good faith and fair dealing. In her original complaint, drawn in narrative style, Davison explains that in 2008, years after Mr. Davison went to work for the Portland Schools, Mr. Davison applied for a waiver of premiums under the MSMA plan and Aetna approved the application. That approval and oral communications from Aetna indicating that the policy was "active" lead the Davisons to believe that Mr. Davison "did have this policy and his family would receive the proceeds upon his death." (Compl. at 1, ECF No. 1-1.) Then, in February 2009, after Mr. Davison's death, the same Aetna representative who approved the waiver application, Linda Decarli, wrote to say that the approval was in error because Mr. Davison did not have the policy. (Id.) Davison's complaint read as though she recognized that there had, in fact, been an error, but that she believed Aetna should pay because her husband died believing he had the coverage. (Id.)

On March 27, 2013, Aetna filed a motion to dismiss based on ERISA preemption. In its motion to dismiss, Aetna included information that Mr. Davison was enrolled in the life insurance offering of the Maine State Retirement System Life Insurance Plan (the Maine "PERS plan") rather than the MSMA plan, but that he was enrolled in the MSMA's *long term disability* program, which, according to Aetna, was one reason for its mistake. (Mem. in support of Def.'s Mot. to Dismiss at 1, ECF No. 13.) Aetna also administers the PERS plan and, according to Aetna, it paid Davison $100,000 in life insurance proceeds under the PERS life insurance

program.  (Id.)  Although these representations fell outside of the four corners of the complaint, Davison's response to the motion addressed the representations and did not deny them.  Davison continued to complain that Aetna should bear financial responsibility for its mistake and for the failure to correct the mistake while Mr. Davison still lived.  She also obliquely asserted that Aetna could not state that Mr. Davison did not have the MSMA life insurance policy, though that is, in fact, exactly what Aetna is saying in its motion to dismiss.  (Response to Mot. to Dismiss at 1-5, ECF No. 15.)  More tellingly, she indicated that she had supplied Aetna with proof of premium payments in connection with her claim for life insurance proceeds under the Maine PERS plan.  (Id. at 5, ¶ 12(c).)  She nowhere suggested the ability to do likewise with respect to the MSMA plan, though she indicated that an employee within the Portland School had misdirected the PERS premium payments to the school's general fund and that she obtained the benefit anyway.  Although unrelated to the MSMA plan, that development, in her view, "provides proof that clerical errors do happen and the entity involved must be held accountable." (Id.)

On May 13, 2013, I issued a procedural order in which I explained that ERISA preemption barred Davison from proceeding on state law tort claims against Aetna, but that ERISA (the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq.) includes a civil enforcement scheme, 29 U.S.C. § 1132(a)(1), which permits her to proceed with a statutory claim against Aetna so long as she alleges that her late husband was actually enrolled as a participant in the MSMA plan's life insurance program and that she was his designated beneficiary.  (Procedural Order at 10-12, ECF No. 18.)  I granted Davison leave to file an amended complaint to make the necessary allegations, should she choose to do so, and to assert her claim pursuant to 29 U.S.C. § 1132(a)(1).  (Id. at 12 ("As a pro se plaintiff Davison should

4

have an opportunity to amend her complaint to allege that Mr. Davison was a participant in the MSMA plan's group life insurance policy at the time of his death.") & 13 ("It appears that Davison may have intended to allege that her husband was enrolled in the MSMA plan's life insurance program and, if so, Davison should be given leave to file an amended complaint so stating.").)  I explained that if it is her position that her husband was a participant she should file a motion to amend accompanied by a proposed amended complaint.  (Id. at 13.)  I also advised her to put forth her factual allegations in a series of sequential numbered paragraphs to facilitate Aetna's answer.  (Id.)  The procedural order concluded that a final recommendation on Aetna's motion to dismiss would be deferred pending Davison's possible amendment of her complaint.  (Id. at 14.)  Thus, this recommended decision addresses not only the current motion to amend, but also Aetna's deferred motion to dismiss.

      Following a brief extension of time, Davison filed an amended complaint on June 10, 2013.  (ECF No. 23.)  On June 11, I struck that pleading and reminded Davison that she must file a motion to amend with her proposed amended complaint and gave her until June 14 to do so.  (ECF No. 24.)  On June 17, Davison filed a motion to amend and attached her proposed amended complaint.  (ECF No. 25.)  Davison's core allegations are now contained in 19 numbered paragraphs.  (Proposed Am. Compl. at 3-4, ECF No. 25-1.)  However, she also persists in including several pages of legal argument, has increased to seven the number of state law claims, and has failed to make any mention of 29 U.S.C. § 1132(a), the federal statute that actually applies when one brings suit to recover proceeds from an employee benefit plan.

      On July 8, 2013, Aetna filed its opposition to the motion to amend.  (Response, ECF No. 27.)  Aetna argues that leave to amend must be denied because the proposed state law claims are futile, as I explained in my procedural order.  Aetna also argues that any claim under ERISA's

civil enforcement provision would be futile given the factual allegations. (Response at 7-8.) Aetna addresses the factual allegations and various additional attachments as well. (Id. at 9-11.) Davison filed her reply on July 23, reiterating that she sees the case as involving fraud and deception on the part of Aetna. (Reply at 2, ECF No. 28.) She asserts that she has requested information of Aetna and that her requests for additional information have not been answered. (Id. at 3.) She does not, however, explain what information it is that she needs or why she cannot determine whether Mr. Davison paid premiums to the MSMA plan for life insurance coverage. She insists that this case is about the wrongful denial of benefits and emphasizes the fact that Aetna's records indicated the existence of an active policy. (Id. at 9.)

Distilled to the essence, Davison's pleadings indicate that she believes she should recover life insurance proceeds not because her husband enrolled in and paid premiums under the plan after his return to Portland Schools in 2002, but because he was told by school representatives beginning in 2007 that he had life insurance under the MSMA plan and also under the PERS plan and because, after being informed by doctors that he had five months to live, Aetna approved Mr. Davison's application for extension of benefits without payment of premiums (based on disability) and did so under the MSMA plan rather than the PERS plan.

## DISCUSSION

Davison's motion to amend (ECF No. 25) is made in the context of Aetna's motion to dismiss (ECF No. 12). For reasons that follow, I recommend that the court grant Aetna's motion to dismiss. I further recommend that the court deny the motion to amend because the proposed amendments are not sufficient to overcome the motion to dismiss and assert only futile claims.

A.	**Summary Dismissal Standards**

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a).  In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint sets forth a claim for recovery that is "plausible on its face."[2]  Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).  "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Iqbal, 129 S. Ct. at 1949).  A plaintiff's complaint need not provide an exhaustive factual account, only "a short and plain statement."  However, the allegations must be sufficient to identify the manner by which the defendant subjected the plaintiff to harm and the harm alleged must be one for which the law affords a remedy.  Iqbal, 129 S. Ct. at 1949.

When the plaintiff is a pro se litigant, the court will review his or her complaint subject to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Additionally, the pleadings of pro se plaintiffs are generally interpreted in light of supplemental submissions, such as any response to a motion to dismiss.  Wall v. Dion, 257 F.

---

[2] When conducting its review of a motion to dismiss, the court also may consider documents that are central to the plaintiff's complaint.  Greenier v. Pace Local No. 1188, 201 F. Supp. 2d 172, 177 (D. Me. 2002).  In fashioning this recommended decision, I have considered certain provisions found in the plan's summary of coverage.  See, infra, notes 4 and 5.

Supp. 2d 316, 318 (D. Me. 2003).  In some circumstances, if it appears that a pro se litigant might be able to plead adequate facts if he or she better understood the applicable law, the Court may provide some opportunity to understand what the law requires, along with an opportunity to supplement the pleadings.  Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 20 (1st Cir. 2004); Cote v. Maloney, 152 Fed. App'x 6, 8 (1st Cir. 2005) (unpublished).  Davison has received such an opportunity in this case.

**B.     ERISA Preemption**

The procedural order explained ERISA preemption already, but I reproduce that discussion here to reiterate for Davison why she now finds herself in federal court and why her pleas about deceit, breach of contract, unfair practices, and other state law claims are not being treated as viable, independent causes of action.

Congress enacted the Employee Retirement Income Security Act to "'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'"  Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)).  ERISA is designed to "provide a uniform regulatory regime over employee benefit plans."  Id.  Consequently, ERISA includes a "supercedure" provision to the effect that the Act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  This expansive preemption provision ensures that the regulation of employee benefit plans will be "exclusively a federal concern."  Davila, 542 U.S. at 208 (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981)).

ERISA includes "an integrated system of procedures for enforcement" that delimits the remedies available to participants frustrated with plan administration or benefits determinations. Id. (quoting Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147 (1985)).  This civil enforcement system is essential to the achievement of ERISA's objectives and overrides state causes of action that would supplement or expand upon the remedial options prescribed by Congress.  Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137 (1990);  Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52 (1987).  "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  Davila, 542 U.S. at 209.

Aetna's ERISA preemption argument raises a factual issue that turns on two questions: (1) whether the plan at issue is an employee benefit plan and (2) whether the cause of action relates to the plan.  Colonial Life & Accident Ins. Co. v. Medley, 572 F.3d 22, 29 (1st Cir. 2009). "The question of whether an ERISA plan exists is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." Wickman v. NW Nat'l Ins. Co., 908 F.2d 1077, 1082 (1st Cir. 1990) (citation omitted).  "A law 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 98 (1983).  Davison's pleadings conclusively establish that the life insurance proceeds she seeks would come from an employee benefit plan. Moreover, the fact that her state law claims seek to recover money from an employee benefit plan establishes that those claims "relate to" an employee benefit plan.  Her state law claims are therefore preempted by ERISA.  Davila, 542 U.S. at 209;  see also Wickman, 908 F.2d 1077, 1082 (1st Cir. 1990) (explaining that common law contract and torts claims seeking ERISA plan

9

benefits are pre-empted by federal law). Because the state law claims are preempted they must be dismissed for failure to state a claim for which relief can be granted.

C.  **Construing Davison's Complaint to Assert a Claim under 29 U.S.C. § 1132**

Despite being advised previously of ERISA preemption and the need to assert a claim under federal law rather than state law, Davison has failed to even mention 29 U.S.C. § 1132(a) in her proposed amended complaint. Nevertheless, the court might construe the pleadings as designed to raise a claim under ERISA's "civil enforcement" provision. However, to state a viable ERISA enforcement claim to recover life insurance premiums from the MSMA plan, Davison must allege, among other things, that Mr. Davison was a participant in that plan at the time of his death. Id. § 1132(a)(1). Alternatively, Davison would have to allege facts from which it would be fair to infer that Mr. Davison lost an opportunity to enroll in the plan because of misrepresentations by one or more plan fiduciaries. In her proposed amended complaint, Davison does not allege that Mr. Davison was actually enrolled in the plan when he died.[3] Instead, she alleges only facts involving misrepresentations made after Mr. Davison received his cancer diagnosis, facts she feels are sufficient to make Aetna pay anyway. (Proposed Am. Compl. ¶¶ 7, 8, 10-14.)

Davison's proposed amended complaint still fails to state a claim. What Davison's pleadings reflect are that she and Mr. Davison enquired about Mr. Davison's life insurance coverage when they learned of his terminal illness and that they were mistakenly led to believe, *at that time*, that Mr. Davison was enrolled in life insurance with two different plans rather than

---

[3] Davison does allege that her husband enrolled in the MSMA plan in 2001 upon the commencement of his brief period of employment with SAD 57. However, the plan language indicates that coverage terminates upon the cessation of employment. (Summary of Coverage, MSMA Group Insurance Trust, at 16, ECF No. 14-2 (PageID # 123).) Consequently, Mr. Davison had new coverage elections to make when he left SAD 57 and returned to Portland Schools. Davison's allegations do not indicate that Mr. Davison re-enrolled in the plan or paid premiums for participation in the MSMA plan following his employment with the Portland Schools. Nor do her allegations suggest that Aetna misrepresented any material fact to Davison in relation to his enrollment decision.

one. Upon Mr. Davison's inability to continue working, he applied for continuation of insurance coverage without payment of premiums under the MSMA plan and Aetna erroneously processed and approved the claim under that plan, which eventually brought about the discovery that Mr. Davison was no longer enrolled in the MSMA plan but was, instead, enrolled in the PERS plan. These misrepresentations were extremely unfortunate because they generated an expectation that has not been realized. However, as Aetna only communicated the misinformation after Mr. Davison discovered the existence of his terminal illness, Aetna's misrepresentation did not deprive Mr. Davison of the opportunity to enroll in the MSMA life insurance program.[4]

## CONCLUSION

For the reasons set forth above, I RECOMMEND that the court: (1) deny Davison's motion to amend (ECF No. 25) based on the futility of her proposed amendment and (2) grant Aetna's motion to dismiss (ECF No. 14).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

August 15, 2013                    /s/ Margaret J. Kravchuk
                                   U.S. Magistrate Judge

---

[4] The plan indicates that employees who have not enrolled in the plan within 31 days of their eligibility date may enroll at a later date, but to do so must "submit evidence of good health that is acceptable to Aetna." (Summary of Coverage at 2, PageID# 108.) I cannot see in Davison's allegations a plausible basis to infer that Mr. Davison lost an opportunity to enroll in 2007 or later due to Aetna's (or any other plan fiduciary's) misrepresentation about the existence of coverage under the plan.